NOT DESIGNATED FOR PUBLICATION

No. 124,550

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

TEVEERE BATES,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; JOHN E. SANDERS, judge. Opinion filed January 27, 2023.
Affirmed in part, reversed in part, and remanded with directions.

*Elizabeth Seale Cateforis*, of Paul E. Wilson Project for Innocence and Post-Conviction
Remedies, University of Kansas School of Law, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*,
attorney general, for appellee.

Before GARDNER, P.J., WARNER and COBLE, JJ.

PER CURIAM:  Teveere Bates timely filed a K.S.A. 60-1507 motion after his
convictions of second-degree murder and possession of methamphetamine with intent to
distribute were affirmed on appeal. In his motion, Bates made a claim of actual
innocence, in addition to five claims of ineffective assistance of trial counsel. The district
court summarily denied all of Bates' claims without granting an evidentiary hearing. On
appeal, Bates challenges the district court's findings.

1

But Bates did not adequately brief his claim of actual innocence, and we find it imprudent to decide it under the circumstances. While federal and Kansas courts have seemingly left the door open for movants to pursue procedural or substantive claims of actual innocence in habeas proceedings, Bates did not clearly argue what type of claim he asserts and what standard should apply for lodging and reviewing such a claim. Bates also failed to meet his burden to show he was entitled to an evidentiary hearing on all but one of his five remaining claims of ineffective assistance of counsel because his claims were conclusory or not supported by evidentiary bases. But we find the district court should have granted an evidentiary hearing to explore Bates' claims regarding his defense investigator who was not called as a witness at trial. For the reasons described below, we reverse the district court's decision to deny Bates' motion as to his ineffective assistance of counsel claim related to the private investigator and remand for an evidentiary hearing to consider that issue. We affirm the district court's rulings on Bates' remaining claims.

FACTUAL AND PROCEDURAL BACKGROUND

In December 2016, a jury convicted Bates of one count of second-degree murder, in violation of K.S.A. 2015 Supp. 21-5403(a)(1), and one count of possession of methamphetamine with the intent to distribute, in violation of K.S.A. 2015 Supp. 21-5705(a)(1), (d)(3)(C). The district court sentenced Bates to a controlling term of 653 months in prison. On Bates' direct appeal, a panel of this court summarized the facts of the underlying case as follows:

> "In the early morning hours of July 8, 2015, officers from the Wichita Police
> Department were dispatched to a shooting in the area of Douglas and Estelle Streets.
> Officers discovered the shooting victim, Richard Romero, lying in the street. Romero was
> taken to the hospital and later died from a gunshot wound.
> "Officers spoke to individuals at the scene and canvassed the area to search for
> possible witnesses to the crime. During the investigation, law enforcement identified
> Bates as a potential suspect in the shooting. Following a search of the area, officers

2

located Bates in the attic of a nearby upstairs apartment. Also in the attic, officers discovered a black nylon bag with several smaller bags inside, including a Crown Royal bag that contained two pipes commonly used to smoke methamphetamine. Inside the black bag, officers found pills, a digital scale, a black phone cord, a gray digital recorder, and a plastic bag containing 13.88 grams of a white crystal substance that was later identified as methamphetamine. An audio file recovered from the recorder contained a recording of several voices, including those identified as belonging to Bates and Romero. The individuals in the recording engaged in conversation before the sound of a gunshot was heard. Officers searched the attic and the rest of the apartment but did not locate a gun.

"The State charged Bates with one count each of second-degree murder and possession of methamphetamine with intent to distribute. At trial, multiple witnesses testified about the events leading up to Romero's shooting. On July 7, 2015, several individuals had gathered at Richard Kennedy's apartment located at the corner of Douglas and Estelle to celebrate Kristi Dean's birthday. Bates, also known as 'Top,' lived in an apartment building north of Kennedy's apartment. Dean testified that she and Bates had prepared for her birthday party that afternoon and that she arrived at Kennedy's apartment between 9 and 10 p.m. Several people were already at the party, which took place outside on Kennedy's porch. Dean testified that Venetia Camel, known as 'Baby Sister,' and Isaac Riverson arrived at the party in a green Saturn SUV. Later, Bates arrived on foot and DeDawn Blake arrived in a black four-door sedan. Romero also joined the party at some point. According to Dean, Romero appeared only to know a man named Felix, another guest at the party.

"At some point that evening, Bates and Blake left together in Blake's car. Blake testified that she drove Bates to a Kwik Shop to purchase cigarettes. Tyrell Boor, a Kwik Shop employee, testified that he was working when Bates came inside the store that night. According to Boor, Bates carried a black nylon bag that had a Crown Royal bag inside. Boor stated that Bates opened the Crown Royal bag to reveal crystal-like substances inside that he identified as methamphetamine and said that he had 'gotten shorted on a deal' by around $500. Video from the Kwik Shop showed Bates entering the store with a black bag, opening the bag, and displaying its contents to Boor.

"Back at Kennedy's apartment, Dean testified that she saw Camel leave the porch and walk to her car. Dean heard Romero ask if anyone had any weed. Dean then saw Riverson, Romero, and Felix leave the porch and walk through the yard. Dean denied

witnessing any arguments or hostility between the men. Dean then observed Blake's black sedan drive around the corner onto Estelle but did not see who was inside. Thereafter, Dean heard a gunshot and saw Camel's car drive around the corner heading west on Douglas. Dean did not hear any sort of altercation before the gunshot. Dean stated that she and Kennedy waited a few minutes and then walked through the yard to the curb, where they saw Riverson running west in front of the laundromat. Dean claimed that Riverson yelled, 'Top's crazy' as he ran. Dean saw Romero lying in the street and Felix, who was knelt down next to him, said that Romero was not breathing. Dean did not see Bates in the area.

"As Dean went back toward Kennedy's apartment she saw Bates running behind her. Once back at the apartment, Dean said she told Bates that a man was dying in the street and asked why he would do something like that. According to Dean, Bates said, 'I had to do it, Baby Sister was in the car.' Dean responded that Romero was just looking for some weed and was not trying to hurt anyone. Dean claimed that Bates said, 'I didn't know, I didn't know.' Bates then went to Kennedy's front porch, and Dean claimed to hear Bates tell Kennedy, '[D]on't say anything, don't tell.' Dean said that after they heard the sound of sirens approaching, Bates jumped over to the porch next door and went upstairs to an apartment belonging to Tamra Silverson.

"Dean spoke with law enforcement when they arrived and later went to the police station for an interview. Dean admitted that she did not see Bates or anyone else with a gun and did not witness the shooting. Dean also admitted that she drank wine and smoked marijuana at the party but denied that she was drunk or high. Finally, Dean admitted that she had told police at least three different versions of events but denied that she had been coerced or forced to make up her testimony.

"Bates testified in his own defense. He stated that on the afternoon of the party, he ran errands with Dean and bought alcohol and marijuana for the party. Bates said that when he got to the party that night, he hung out on the porch, where he ate, drank, and smoked. Bates remembered Romero arriving at the party and said that he had previously met Romero. Bates testified that he left the party at some point, and Blake drove him to the Kwik Shop. Bates denied talking to Boor about a drug deal or showing him any drugs. Instead, Bates claimed that he showed Boor rings and other jewelry that he was selling.

"Bates said that when he and Blake got back to the party, he saw Riverson and Romero talking and having some sort of altercation. Bates admitted that his voice was on

4

the audio recording and stated that the recorder had been in a zippered pouch that he was wearing. Bates said that he set the pouch on top of Blake's car to go deal with the altercation between Riverson and Romero. When he asked them what was going on, Riverson said he was taking Romero to get some weed.

"According to Bates, as Romero walked toward Camel's vehicle, Riverson said, 'I'm glad you came because I almost shot that mother fucker.' Bates claimed that he had seen Riverson with a little black handgun earlier in the evening. Bates stated that he tried to calm Riverson down, and Riverson then went with Romero to Camel's car to get some weed. Bates said he went back to Blake's car and talked to Blake before he noticed that Riverson and Romero were again having issues. Bates testified that Romero opened Camel's car door, which made Riverson mad. Bates said he went to diffuse the situation and ended up pushing Romero to the ground. Bates stated that he might have punched Romero but could not recall. Bates claimed that he was simply trying to get Romero to leave and come back later due to the tension with Riverson. Bates said that Riverson came up behind him, moved him out of the way, and shot Romero in the chest. But Bates admitted that he did not see Riverson with a weapon. Bates stated that he first ran to Blake's car but then ran to Kennedy's apartment, where he ran into Dean. Bates claimed that Dean was screaming and yelling about a man being dead, so he shook her and told her to calm down because he was worried that Riverson would come back and shoot them.

"Bates testified that he was 'shook up,' so he went to Silverson's apartment, where he went up into the attic area that his friend Ruby [Nielsen] was converting into a bedroom. Bates stated that Ruby gave him a hit of methamphetamine to help him calm down, but this was the only methamphetamine he saw in the attic and he did not know there was any additional methamphetamine in the black bag. Bates contended that the bag containing the methamphetamine belonged to Ruby, and he believed that she had gotten the drugs from his cousin. Bates denied that the methamphetamine or the pipes in the bag belonged to him or that he was holding them for anyone else.

"Bates disagreed that he was trying to hide from law enforcement, claiming instead that he stayed in the attic because he was 'shook up' and did not want to see the police. Bates also said that Silverson had locked the attic door, causing him to be trapped. But Bates admitted that he had sold marijuana in the past and that he wanted to hide from law enforcement because the scales were his and he had marijuana on his person. Bates denied having any type of weapon and denied shooting Romero.

"DeDawn Blake corroborated some parts of Bates' testimony. Blake testified that Bates told her about Riverson, stating that he was about to shoot Romero. Blake said that when Riverson and Romero went over to Camel's car, Bates got out of her car and went to talk to them. Blake claimed she saw Bates punch Romero, causing Romero to fall to the ground. Blake said that she observed Riverson standing over Romero and then heard a gunshot. But Blake said that Bates and Riverson both had their backs to her and she did not see a gun or see who shot Romero. Blake admitted that Bates was the only person she saw getting physical with Romero. Blake also testified that Bates came back to her car after the shooting and told her to drive him away and stated that he was not going down for something he did not do. Blake stated that she and Bates drove down the street a ways, but then she told Bates to get out of the car because she did not want any further involvement in the situation.

"Riverson testified that he did not remember anything about the night of Romero's shooting and that he could not recall talking to the police or any prior testimony he may have given, including testimony that Bates had a gun and that he saw Bates shoot Romero. Riverson denied killing Romero.

"The jury found Bates guilty as charged. The district court sentenced Bates to a controlling term of 653 months in prison. Bates timely appeals from his convictions and sentences." *State v. Bates*, No. 117, 419, 2019 WL 1412600, at *1-3 (Kan. App. 2019) (unpublished opinion).

The Court of Appeals panel affirmed Bates' conviction—denying relief on all six of Bates' claims on appeal. 2019 WL 1412600, at *11. The Kansas Supreme Court denied Bates' petition for review. See *State v. Bates*, 310 Kan. 1063 (2019).

Following our Supreme Court's denial of his petition for review, Bates timely filed a pro se K.S.A. 60-1507 motion. In his motion, Bates asserted a claim of actual innocence. He also asserted five claims of ineffective assistance of counsel against his trial counsel.

The district court summarily dismissed Bates' K.S.A. 60-1507 motion without granting an evidentiary hearing on his claims. Preliminarily, the district court rejected

6

Bates' claim of actual innocence because the Court of Appeals panel had already considered the sufficiency of the evidence against Bates and affirmed his convictions. The district court rejected Bates' ineffective assistance of counsel claims because they were either conclusory, unsupported by evidence, or insufficient to meet Bates' burden of proving prejudice.

Bates appeals.

DISCUSSION

Bates raises a single issue on appeal—that the district court erred in summarily dismissing his K.S.A. 60-1507 motion without an evidentiary hearing—but makes two primary arguments within that claim. First, Bates argues the district court employed the wrong standard when it denied his claim of actual innocence. Second, Bates argues his claims of ineffective assistance of counsel were sufficient to meet his burden of establishing the need for an evidentiary hearing.

In response, the State raises multiple procedural grounds, contending Bates' pro se motion should not be liberally construed because it was prepared by an attorney and some of his claims were not preserved for appellate review. As to the merits of Bates' claim, the State argues that Bates' claim of actual innocence is inappropriate given the timeliness of his K.S.A. 60-1507 motion. The State also contends the district court properly denied Bates' request for an evidentiary hearing because his claims were conclusory and made without evidentiary support.

*Standard of review for K.S.A. 60-1507 motions*

A district court has three options when examining a K.S.A. 60-1507 motion:

"'"(1) The court may determine that the motion, files, and case records conclusively show the prisoner is entitled to no relief and deny the motion summarily; (2) the court may determine from the motion, files, and records that a potentially substantial issue exists, in which case a preliminary hearing may be held. If the court then determines there is no substantial issue, the court may deny the motion; or (3) the court may determine from the motion, files, records, or preliminary hearing that a substantial issue is presented requiring a full hearing.'" [Citations omitted.]" *State v. Adams*, 311 Kan. 569, 577-78, 465 P.3d 176 (2020).

When a district court summarily dismisses a K.S.A. 60-1507 motion without an evidentiary hearing—as happened here—an appellate court conducts a de novo review to determine whether the motions, files, and records of the case conclusively establish that the movant is not entitled to relief. *Beauclair v. State*, 308 Kan. 284, 293, 419 P.3d 1180 (2018).

To be entitled to relief under K.S.A. 60-1507, the movant must establish by a preponderance of the evidence either: (1) "the judgment was rendered without jurisdiction"; (2) "the sentence imposed was not authorized by law or is otherwise open to collateral attack"; or (3) "there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." K.S.A. 2021 Supp. 60-1507(b); Supreme Court Rule 183(g) (2022 Kan. S. Ct. R. at 244).

A movant also bears the burden of establishing entitlement to an evidentiary hearing. To meet this burden, a movant's contentions must be more than conclusory, and either the movant must set forth an evidentiary basis to support those contentions or the basis must be evident from the record. *Thuko v. State*, 310 Kan. 74, 80, 444 P.3d 927 (2019). If this showing is made, the court must hold a hearing unless the motion is a second or successive motion seeking similar relief. *Sola-Morales v. State*, 300 Kan. 875, 881, 335 P.3d 1162 (2014). In other words, the district court shall hold an evidentiary

hearing on a K.S.A. 60-1507 motion, unless the motion, files, and records of the case conclusively show the movant is not entitled to relief. K.S.A. 2021 Supp. 60-1507(b); Supreme Court Rule 183(f) and (j).

*Liberal construction of Bates' K.S.A. 60-1507 motion*

As an overarching concern, the State contends that, on appeal, this court should not liberally construe Bates' K.S.A. 60-1507 motion because "it is clear that his petition was [prepared] by counsel." But the State does not suggest the district court erred in construing Bates' pro se K.S.A. 60-1507 motion. Rather, the State seems to be making this argument in response to Bates' one-sentence statement reciting the pro se standard in his brief on appeal.

Although pro se pleadings are generally liberally construed, and our review over the district court's construal of a pro se pleading is unlimited, we find this a non-issue here. *State v. Gilbert*, 299 Kan. 797, 802, 326 P.3d 1060 (2014). While the State argues it is "essential" for us to address this point, regardless of whether an attorney prepared Bates' motion, we find the construction of Bates' pro se motion does not change the analysis of his claim on appeal.

Under this court's rules of construction, the pleading's content governs. *Makthepharak v. State*, 298 Kan. 573, 581, 314 P.3d 876 (2013); *State v. Kelly*, 291 Kan. 563, 565, 244 P.3d 639 (2010). Bates clearly filed a habeas corpus pleading under K.S.A. 60-1507, and there is no dispute that Bates' timely motion was intended to be a claim under K.S.A. 60-1507. Whether his claim of actual innocence or his claim of ineffective assistance of counsel provides an avenue for which this court can provide relief is a question that is not impacted by any liberal construction of Bates' K.S.A. 60-1507 motion.

*Bates' actual innocence claim*

In his K.S.A. 60-1507 motion, Bates stated he was "*actually innocent* of [the] crimes of conviction." (Emphasis added.) He contended a private investigator hired by the defense, Joe Schillaci, obtained statements made by the true shooter. Bates alleged that although Schillaci investigated and found evidence exonerating Bates, the "information was presented to the District Attorney but was not admitted at trial."

The State now complains that Bates is relying on the definition of actual innocence as provided in K.S.A. 2021 Supp. 60-1507(f)(2)(A) for the first time on appeal. And, generally, issues not raised before the district court cannot be raised on appeal. See *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014).

While the State correctly points out that Bates did not specifically identify K.S.A. 2020 Supp. 60-1507(f)(2)(A) in his motion as the statutory basis for his innocence claim, the record shows Bates did make an actual innocence claim that was ultimately addressed by the district court. Bates' argument on appeal expands on the brief argument submitted in his motion, but the claim itself was raised and addressed at the district court.

In its decision to summarily deny Bates' motion, the district court found Bates' actual innocence claim was equivalent to the challenge he made to the sufficiency of the evidence in his direct appeal. The district court noted that a panel of this court rejected Bates' innocence claim on direct appeal, finding that although the evidence at trial was circumstantial, it was sufficient to support his conviction. And, because the district court found Bates' innocence was considered on direct appeal, it would "not rehash it."

Bates now contends the district court erred in making this finding because it applied an incorrect legal standard. Bates is correct that the standard for reviewing a sufficiency of the evidence claim differs from the standard for reviewing a claim of actual

10

innocence. Cf. *State v. Aguirre*, 313 Kan. 189, 209, 485 P.3d 576 (2021) ("'When the sufficiency of the evidence is challenged in a criminal case, we review the evidence in a light most favorable to the State to determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt.'"); *Beauclair*, 308 Kan. at 297 (defining "actual innocence"—as provided in K.S.A. 2017 Supp. 60-1507[f][2][A]—as "more likely than not that no reasonable juror would have convicted the prisoner in light of new evidence"). So, the district court erred by applying an incorrect legal standard to Bates' innocence claim.

Despite this error, Bates' claim of actual innocence does not necessarily provide him an avenue for relief under K.S.A. 2021 Supp. 60-1507(a), in part because his claim is inadequately briefed. And, given our remand below on the ineffectiveness of Bates' trial counsel related to the argument regarding the private investigator that he makes to support his innocence claim, it is unnecessary for us to decide his claims based on a novel claim of actual innocence. However, a brief discussion of the claim is helpful.

We acknowledge that the Kansas Supreme Court has recognized two types of actual innocence claims: one procedural, and one substantive. *Beauclair*, 308 Kan. at 297-301. The first, a procedural innocence claim, is a claim that constitutional errors deprived the jury of critical evidence which would have established the movant's innocence. In the second, a substantive actual innocence claim, the movant claims he is actually innocent despite a fair and error-free trial which concluded in a guilty verdict. 308 Kan. at 298-300 (citing *Schlup v. Delo*, 513 U.S. 298, 314-16, 115 S. Ct. 851, 130 L. Ed. 2d 808 [1995]). But under the analyses provided by the parties on appeal, it seems Bates' claim does not fit neatly into either category, and the standard we might use to review such a claim remains a mystery. Even so, a brief review of each type of innocence claim is prudent.

11

*Bates' actual innocence claim is not procedural.*

First, it is apparent that Bates' claim is not procedural. Procedural claims of actual innocence are used as a gateway for courts to consider K.S.A. 60-1507 claims that are procedurally barred as successive or untimely. For example, to avoid a dismissal of a second or successive K.S.A. 60-1507 motion, the movant may show exceptional circumstances that prevented him or her from raising the issue in a prior K.S.A. 60-1507 motion. Such exceptional circumstances can include a colorable claim of actual innocence based on new evidence. *Beauclair*, 308 Kan. at 304; see *Skaggs v. State*, 59 Kan. App. 2d 121, 146, 479 P.3d 499 (2020), *rev. denied* 313 Kan. 1042 (2021).

Likewise, a colorable claim of actual innocence may extend the one-year time limitation for bringing an action under K.S.A. 2021 Supp. 60-1507(f)(1). Under K.S.A. 2021 Supp. 60-1507(f)(2), the one-year time limitation may be extended by the district court only to prevent a manifest injustice. To find manifest injustice, courts are limited to "determining why the prisoner failed to file the motion within the one-year time limitation or whether the prisoner makes a colorable claim of actual innocence." K.S.A. 2021 Supp. 60-1507(f)(2)(A).

But Bates' K.S.A. 60-1507 motion is neither successive nor untimely, and he concedes as much in his reply brief. This is Bates' first K.S.A. 60-1507 motion, and it was filed within the one-year time limitation under K.S.A. 2020 Supp. 60-1507(f)(1). So, he cannot rely on a claim of actual innocence as a procedural gateway for consideration of his K.S.A. 60-1507 motion. See *Skaggs*, 59 Kan. App. 2d at 135-36 ("[A] movant may succeed on a *Schlup* [procedural innocence] claim only if the movant's claims for habeas relief are procedurally barred.").

12

*Bates' innocence claim does not appear to be substantive, either.*

Although Bates contends his innocence claim is "freestanding" and not procedural, this characterization is not quite accurate. A substantive actual innocence claim—as described by the United States Supreme Court in *Herrera v. Collins*, 506 U.S. 390, 113 S. Ct. 853, 122 L. Ed. 2d 203 (1993), our Supreme Court in *Beauclair*, and a panel of this court in *Skaggs*—is one "in which a movant asserts a substantive claim of actual innocence—e.g., arguing that newly discovered evidence establishes a movant is actually innocent and requires a new trial. The most familiar *Herrera* claims are those in which DNA testing leads to exoneration of the applicant." *Skaggs*, 59 Kan. App. 2d at 135-36 (citing *Herrera*, 506 U.S. 390; *Beauclair*, 308 Kan. at 295-99).

Again, a substantive innocence claim is one in which the movant claims he or she is actually innocent despite a fair and error-free trial which resolved with a guilty verdict. But such is not Bates' claim. Bates is not suggesting his trial was free of error and newly discovered evidence points to his innocence. Rather, he maintains that errors during his trial resulted in evidence being withheld from the jury.

*Were we to consider the innocence claim, the distinction matters.*

So, Bates' innocence claim does not fit neatly into the categories outlined by our appellate courts. He claims, in a nutshell, that evidence located by a private investigator which might exonerate him—which was available at the time of trial—was not introduced at trial. In effect, then, he flirts with a sort of procedural claim—that due to failures occurring at trial, his trial was not fair—rather than a substantive claim in which a fair and error-free trial still resulted in a guilty verdict.

But the distinction between a procedural, gateway claim of actual innocence and a substantive claim for relief matters, because the standard of review for each is different.

13

Caselaw suggests a movant's burden of proof is higher for substantive claims of actual innocence compared to procedural actual innocence claims that are made as a gateway for consideration of a habeas petition. See *Beauclair*, 308 Kan. at 298-99.

In *Schlup*, the United States Supreme Court noted "a court's assumptions about the validity of the proceedings that resulted in convictions are fundamentally different in [a procedural gateway claim] than in [a substantive innocence claim]." 513 U.S. at 315. Unlike the procedural claims in *Schlup*, which alleged various trial errors, the claims in *Herrera* were evaluated on the assumption that Herrera's trial had been error free. "In such a case, when a petitioner has been 'tried before a jury of his peers, with the full panoply of protections that our Constitution affords criminal defendants,' [*Herrera*,] 506 U.S. at 419 (O'Connor, J., concurring), it is appropriate to apply an '"extraordinarily high"' standard of review." *Schlup*, 513 U.S. at 315-16.

But this "extraordinarily high" standard does not apply to procedural innocence claims, because such claims are based on trial errors, and convictions resulting from potential trial errors may not be entitled to the same degree of respect. As a result, the movant asserting innocence as a procedural gateway carries "less of a burden." *Schlup*, 513 U.S. at 316.

Although courts have resolved procedural innocence claims, and both the United States Supreme Court and Kansas Supreme Court have left open the opportunity for petitioners to make freestanding claims of actual innocence in a habeas proceeding, no court appears to have encountered a case where the extraordinarily high threshold was met to sustain a substantive innocence claim. See *House v. Bell*, 547 U.S. 518, 555, 126 S. Ct. 2064, 165 L. Ed. 2d 1 (2006) ("[W]hatever burden a hypothetical freestanding innocence claim would require, this petitioner has not satisfied it."); *Herrera*, 506 U.S. at 417 ("The showing made by petitioner in this case falls far short of any such threshold."); see also *McQuiggin v. Perkins*, 569 U.S. 383, 392, 133 S. Ct. 1924, 185 L. Ed. 2d 1019

14

(2013) (noting the United States Supreme Court has "not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence").

And, while a few Kansas courts have contemplated the possibility of substantive claims of actual innocence in a K.S.A. 60-1507 proceeding, the actual consideration of such a substantive claim appears to be an issue of first impression in Kansas. In his reply brief, Bates concedes that "it is not settled in Kansas whether a freestanding claim of innocence is recognized."

Despite this concession, Bates does not benefit us with an explanation of how his claim falls into the category of a substantive innocence claim, and as suggested, we doubt it does. Nor does he provide an analysis of his claim under the "extraordinarily high" threshold required for theoretical freestanding claims of actual innocence. In this respect, Bates' failure to support his point with pertinent authority, or show why his argument is sound despite a lack of supporting authority, is like failing to brief the issue, which results in the issue being deemed waived or abandoned. See *State v. Meggerson*, 312 Kan. 238, 246, 474 P.3d 761 (2020).

Even if we were to assume Bates could present a colorable freestanding actual innocence claim under K.S.A. 2021 Supp. 60-1507(a), it is unclear under what standard we should analyze such a claim. Pursuant to *Herrera*, it is likely that the "extraordinarily high" showing would be required. Yet, *Herrera* and its progeny have explicitly refused to expand on this high burden, and no court has found such a showing has ever been made.

*It is unnecessary for us to plow new ground under these circumstances.*

In addition to the lack of clarity regarding what type of innocence claim Bates presents and the standard we should apply to such a claim, Bates also presents some new arguments on appeal. In his appellate briefing, Bates conflates his actual innocence claim

15

with his ineffective assistance of counsel claims. His briefing suggests had his counsel called five specific witnesses at trial—including the private investigator, Schillaci, and four others—their testimony would have contradicted the State's evidence and supported Bates' claim of actual innocence. On one hand, the State is correct that Bates did not preserve the specific argument he now raises on appeal wherein he appears to argue that his counsel's alleged ineffectiveness as to all five witnesses contributed to his freestanding claim of actual innocence. His claim in his original motion was simply that statements obtained by the defense investigator, Schillaci, were not presented at trial. And because he did not adequately explain why he is raising this new argument regarding other witnesses for the first time on appeal under a qualified exception, we must find Bates waived or abandoned this argument. Supreme Court Rule 6.02(a)(5) (2022 Kan. S. Ct. R. at 36); see *State v. Godfrey*, 301 Kan. 1041, 1044, 350 P.3d 1068 (2015).

To the extent Bates preserved his actual innocence argument on his claim related to the failure to introduce the private investigator's evidence at trial, we find it unnecessary to plow new ground by considering a freestanding innocence claim for the first time, particularly under these circumstances where the type of claim and applicable standard were inadequately briefed. For the reasons outlined below regarding the need for an evidentiary hearing on the ineffectiveness of Bates' trial counsel related to the private investigator evidence, we find it unnecessary to decide his claims based on innocence and proceed to examine his ineffective assistance of counsel claims.

*Bates' ineffective assistance of counsel claims*

In his K.S.A. 60-1507 motion, Bates made five claims of ineffective assistance of counsel. He alleged that his trial counsel was ineffective for: (1) failing to object to jury selection and alleged juror bias; (2) failing to use compulsory processes to call certain witnesses to testify for the defense; (3) failing to sufficiently cross-examine Dean for

16

credibility; (4) failing to object to prosecutorial error; and (5) failing to obtain independent forensic examination of evidence. Each claim is addressed in turn.

*Standards for reviewing claims of ineffective assistance of counsel in K.S.A. 60-1507 claims*

To prevail on a claim of ineffective assistance of trial counsel, a criminal defendant must establish (1) that the performance of defense counsel was deficient under the totality of the circumstances, and (2) that the deficient performance prejudiced the defendant. *Sola-Morales*, 300 Kan. at 882 (relying on *Strickland v. Washington,* 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 [1984]). """To show prejudice, the defendant must show a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" [Citations omitted.]" *State v. Sprague*, 303 Kan. 418, 426, 362 P.3d 828 (2015).

Judicial scrutiny of counsel's performance in a claim of ineffective assistance of counsel is highly deferential and requires consideration of all the evidence before the judge or jury. 303 Kan. at 426. In considering deficiency, "there is a strong presumption counsel 'rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Kelly*, 298 Kan. at 970. "An attorney's strategic decisions are essentially not challengeable if the attorney made an informed decision based on a thorough investigation of the facts and the applicable law." *Wilson v. State*, 51 Kan. App. 2d 1, 14, 340 P.3d 1213 (2014).

To be entitled to an evidentiary hearing and avoid summary denial of his ineffective assistance claim in his K.S.A. 60-1507 motion, Bates bears the burden of showing his contention is more than conclusory, and he either must set forth an evidentiary basis to support this contention, or the basis must be evident from the record.

17

See *Thuko*, 310 Kan. at 80. But the district court need not hold an evidentiary hearing if the motions, files, and records of the case conclusively show Bates is not entitled to relief. K.S.A. 2021 Supp. 60-1507(b); Supreme Court Rule 183(f) and (j).

Utilizing these standards, each of Bates' ineffective assistance of counsel claims is addressed in turn.

*Claim of ineffectiveness based on jury selection and juror bias*

In his K.S.A. 60-1507 motion, Bates claimed his trial counsel failed "to object to jury selection and juror bias." To support his claim, Bates alleged his counsel did not investigate or object when a "jury panel member complained to the court that they heard defendant being disrespectful to the prosecutor" and did not "strike the jury panel when a prospective juror corrupted the jury panel by making biased statements" during voir dire.

When considering Bates' K.S.A. 60-1507 motion, the district court found the record did not support this claim and it was "merely speculative and conclusory." The district court referenced the following exchange between the trial judge and Bates that was held outside the presence of the jury after jury selection concluded:

> "[TRIAL JUDGE]:  The jury has departed. The attorneys and the defendant remain.
> "Mr. Bates, I told you this morning that I do not tolerate disruptive obstructionist behavior. There are some things that you have said and done this afternoon that have caused some concern. I was told—I did not see it myself, but there are people who can verify under oath, if necessary, that when Mr. Quentin Pittman was talking to the jurors about African-Americans and made a comment about some people don't like African-Americans, I'm told that you looked toward Mr. Dwyer, pointed to him, uttered the word you and called him a piece of shit. And—
> "[BATES]:  No, that's not true.

18

"[TRIAL JUDGE]:  And you were within three or four feet of some of the jury panel. They could most likely hear that. I don't know. I can't speak for them.

"Nevertheless, here's what's going to be done. The gentleman here—the black gentleman in the sweater is Mr. Tony Calloway, and he's with our IT Department. Before we begin in the morning, at 9:00 o'clock, he's going to get up here early and he's going to fix up this courtroom with the closed-circuit TV arrangements that I mentioned to you. And we'll be good to go with that at any time. So, if there's any disruptive obstructionist behavior, you'll be removed from the courtroom and you'll watch it on a TV back in the law library where we just had this hearing.

"Also, the deputies have the ability to place a skirt in front of that counsel table. And I'm going to go ahead and have them do that regardless. We'll go ahead and have it throughout the course of the trial. And the reason for that is if you engage in any kind of obstructionist behavior, you'll be placed in leg shackles in civilian clothes at that counsel table so that your conduct can be subject to whatever attention it deserves.

"I just want to go over these things with you now so that you've got a heads-up. That's as much as I need to say at this point. I don't need to have you respond to anything. I'm just giving you advance warning that in this courtroom things are dealt with in an orderly manner and respect is shown at all times."

Based on this exchange, the district court reasoned that Bates' claim regarding his alleged courtroom behavior was speculative and conclusory because there was "no evidence that a jury panel member heard the remark or that the complaint came from a panel member." The district court similarly found Bates' claim that a potential juror made biased statements during voir dire was "simply conclusory" because Bates did not identify either the panel member or the alleged statements.

On appeal, Bates modifies his argument to include an allegation that "there was a member of the jury panel *or a court staff* who complained to the court that he or she heard Mr. Bates being disrespectful to the prosecutor." (Emphasis added.) Bates' appellate argument complains that his trial attorney "did not object to this specific incident and failed to further investigate whether this complaint came from a selected juror. If so, Mr. Pittman could have stricken this member of the jury panel."

19

To the extent Bates' argument has changed on appeal to include allegations against "a court staff," this modification is improper. As previously noted, arguments not raised at the district court cannot be raised for the first time on appeal, and if a new argument is raised, an appellant must explain why they did not make their newly raised argument before the trial court. See *Godfrey*, 301 Kan. at 1044; and Supreme Court Rule 6.02(a)(5). Because Bates failed to explain why he did not make this argument before the trial court, we find his argument regarding court staff is waived or abandoned. *Godfrey*, 301 Kan. at 1044.

As for the remaining issue preserved for appeal, the district court correctly found Bates did not meet his burden of proving entitlement to an evidentiary hearing because his claim regarding his alleged courtroom behavior is conclusory, and he did not set forth an evidentiary basis to support the claim. Bates speculates about what his trial counsel "could have" done if the complaint made against him came from a jury panel member. Bates does not expand on what, exactly, his trial counsel should have objected to. And other than arguing his counsel "could have stricken" the unknown member of the jury panel who may have complained about Bates, he does not explain why his attorney's action—or inaction—was deficient. Moreover, Bates never argues he was prejudiced by his trial counsel's failure to object, investigate, and potentially strike a juror that may have made the complaint.

Additionally, Bates did not present any evidence, and no evidence is evident from the record, to show a jury panel member heard the remark. The only evidence that can be found regarding this incident is the exchange between the trial judge and Bates. And in this exchange, the trial judge does not identify anyone—juror or otherwise—except to say there are "people who can verify under oath" that Bates made such comments about the prosecutor. The trial judge went on to note that the jurors *could have* heard Bates' remark, but the trial judge opined that he did not know. Without evidentiary support, Bates presents only a conclusory argument regarding this interaction.

20

Bates' additional assertion claiming his trial counsel was ineffective for failing to strike a prospective juror is also conclusory and unsupported by the record. Bates' argument on appeal expands on his claim that a prospective juror "corrupted the jury panel by making biased statements" during voir dire. For the first time in his brief on appeal, Bates identifies D.S. as the biased juror. He then argues that one of D.S.'s statements was "clearly biased towards the prosecution." Although the State maintains Bates' argument should be disregarded on appeal since he only now identifies the potential juror, because Bates' contentions may be supported by facts appearing in the record, his expanded factual claim is properly before this court. See *Thuko*, 310 Kan. at 80 ("'"A movant . . . must state an evidentiary basis in support of the claims, or an evidentiary basis must appear in the record."'").

As the State argues, a claim of juror disqualification based on the juror's bias is an issue Bates could have raised in his direct appeal. See *State v. Holt*, 298 Kan. 469, 471, 313 P.3d 826 (2013) (noting the panel considering Holt's second K.S.A. 60-1507 motion found Holt's jury bias claim "could have been raised on direct appeal or in his first 60-1507 motion"). In reaching this conclusion, a panel from our court considered the jury bias claim and found Kansas Supreme Court Rule 183(c)(3) ordinarily prevents a K.S.A. 60-1507 motion from being used as a substitute for a direct appeal. *Holt v. State*, No. 89,273, 2003 WL 22990148, at *4 (Kan. App. 2003) (unpublished opinion).

But Bates does not frame his issue as a challenge to juror disqualification. Instead, Bates argues that his trial counsel's performance was deficient because counsel did not challenge the juror for cause under K.S.A. 22-3410(2)(i). See K.S.A. 22-3410(2)(i) ("A juror may be challenged for cause on any of the following grounds: . . . His state of mind with reference to the case or any of the parties is such that the court determines there is doubt that he can act impartially and without prejudice to the substantial rights of any party.").

21

Regardless of his framing, Bates does not present an evidentiary basis to support his claim. And to the extent Bates does provide evidence, he mischaracterizes the statements made by D.S. During voir dire, this exchange occurred:

"[PROSECUTOR]:  Do you think law enforcement officers are more credible than a civilian?

"[D.S.]:  I think of them as human beings—as far as they're human beings, and I believe that they're taking oaths. That basically they should be truthful in what they're doing.

"[PROSECUTOR]:  Okay. They can make mistakes though.

"[D.S.]:  Absolutely.

"[PROSECUTOR]:  All right. You wouldn't—I guess my question is—a better way to word it is. You wouldn't take them to be more credible than anyone else simply because they are a law enforcement officer?

"[D.S.]:  No, I think—I think that there's credibility in the position that they're holding within the community because they're law enforcement. They're, to my understanding, protecting the laws and everything that we should be abiding by. So if they make a statement, I would say it's credible.

"[PROSECUTOR]:  Okay. If there's evidence to disprove that statement, though, you would—

"[D.S.]:  I would side with what my understanding would be with what would be incorrect or wrong from their standpoint.

"[PROSECUTOR]:  All right. So I guess what I'm saying is you're open to interpretation of that statement based on the evidence.

"[D.S.]:  Absolutely.

"[PROSECUTOR]:  Okay. And that's what I want to hear—

"[D.S.]:  All right."

Bates cites this portion of the record to support his contention that D.S. made a statement that was "clearly biased towards the prosecution." He adds that his trial counsel should have challenged D.S. for cause because his "opinion on the credibility of law

enforcement may have tainted the jury panel . . . ." But Bates fails to identify precisely which statement or answer D.S. provided that would have corrupted the jury panel.

Reviewing D.S.'s statements in full shows the district court could reasonably have found that D.S. did not make such clearly biased statements that the court would have determined there was doubt that D.S. could "act impartially and without prejudice to the substantial rights of any party" under K.S.A. 22-3410(2)(i). While D.S. stated he would generally find law enforcement officers to be credible due to their position within the community, he likewise agreed that he would be open to changing this credibility opinion based upon the evidence presented.

Because Bates' juror selection and juror bias claims are largely conclusory and lack evidentiary support, he did not meet his burden of establishing entitlement to an evidentiary hearing. Our de novo review of these claims determines the motions, files, and records of this case decisively establish that Bates is not entitled to relief on his ineffective assistance of counsel claim based on these juror selection and bias challenges. See *Beauclair*, 308 Kan. at 293.

*Claim of ineffectiveness based on compulsory process to subpoena witnesses*

In his second claim of ineffective assistance of counsel, Bates' K.S.A. 60-1507 motion alleges his trial counsel did not "use compulsory process" to call five specific witnesses to testify in his defense. In dismissing this claim, the district court found Bates did not meet his burden of showing he was entitled to an evidentiary hearing because Bates did not show the witnesses were available or willing to testify, he did not show his trial counsel was made aware of the witnesses, and he did not provide any additional evidence—such as an affidavit—to support his claims.

23

On appeal, Bates argues the district court's reliance on his failure to include affidavits was erroneous because affidavits are not required at this stage of a K.S.A. 60-1507 proceeding. See *Swenson v. State*, 284 Kan. 931, 939, 169 P.3d 298 (2007) ("Although Swenson provided affidavits from some witnesses . . . nothing requires that this be done at this stage. All that was required was that he state the facts and then identify the witnesses who would support those facts.").

While Bates is correct in arguing a district court cannot require an affidavit to support his claims from the identified witnesses at the pleading stage, he is nevertheless required to present a contention that is supported by an evidentiary basis he sets forth, or an evidentiary basis must be evident from the record. See *Thuko*, 310 Kan. at 80. The *Swenson* court added that in stating the evidentiary basis, the K.S.A. 60-1507 motion "must merely 'set forth a factual background, names of witnesses or other sources of evidence to demonstrate that [movant] is entitled to relief.'" 284 Kan. at 938 (quoting *Sullivan v. State*, 222 Kan. 222, 223-24, 564 P.2d 455 [1977]). It is error to deny a K.S.A. 60-1507 motion without a hearing where the motion alleges facts that do not appear in the original record that, if true, would entitle the movant to relief and the motion identifies readily available witnesses whose testimony would support such facts or other sources of evidence. *Beauclair*, 308 Kan. at 296; *Swenson*, 284 Kan. at 939.

In his motion, Bates identified five witnesses who he contends would have provided exculpatory testimony and claims his trial counsel was ineffective for failing to use compulsory process to require these witnesses to testify for the defense. For the first four witnesses identified below, Bates includes only a one sentence statement for each witness that briefly explains what each witness "could have" or "would have" testified at trial. But while Bates' K.S.A. 60-1507 motion may have identified these four witnesses, the factual allegations he attaches to these witnesses are conclusory. See *Skaggs*, 59 Kan. App. 2d at 130-31.

24

First, Bates alleges that Venetia Camel was an eyewitness to the crime and could have testified that Bates did not shoot the victim. Camel, also known as "Baby Sister," was referenced a few times throughout the trial, but there is no indication that Camel was either an eyewitness to the shooting or could have provided any new information to the jury. In fact, the record is contrary to Bates' claim.

During her testimony, Kristi Dean described speaking with Bates soon after she saw the victim lying in the street with a gunshot wound. Dean testified that she told Bates she saw the man in the street and Bates responded and then repeated, "I had to do it, Baby Sister was in the car." Dean agreed when asked that she did not know whether Camel was, in fact, in the car. Although Dean's testimony may support Bates' contention that Camel might have been an eyewitness to the shooting, Dean's testimony is inconclusive as to his claim that Camel would have testified Bates was not the shooter.

Most notably, Bates testified at trial that he believed Camel was asleep at the time of the shooting. This is contrary to Bates' factual assertion that Camel was an eyewitness.

Bates' motion does not allege any specific facts that are contrary to the evidence presented at trial, nor does he allege whether Camel was available to testify to different facts. He simply concludes Camel "could have" testified that Bates did not shoot the victim because she was an eyewitness. Bates did not meet his burden of establishing entitlement to an evidentiary hearing regarding Camel's testimony because he did not identify Camel as a "readily available witness[] whose testimony would support" his factual claim that she was an eyewitness who saw someone else shoot the victim. *Swenson*, 284 Kan. 931, Syl. ¶ 3.

Next, Bates claims Tamra Silverson "would have" testified the drugs found in the attic did not belong to Bates. But this claim is conclusory, contrary to the record, and there is no indication Silverson was an available witness whose testimony would support

25

his claim that the drugs were not Bates. Nothing in the record shows Silverson knew anything about the drugs other than she was present in her home when the officers found Bates—and the drugs—in her attic. Conversely, the record shows that in addition to finding Bates in the attic, the officers found a small, rectangular black bag that contained drug paraphernalia, a Crown Royal bag, and a smaller plastic bag "which had a white in color crystal-like substance . . . believed to be crystal meth." At trial, Bates testified the drugs belong to Ruby Nielsen, who was with him in the attic. Bates admitted to smoking methamphetamine with Nielsen in the attic, but stated Nielsen got the methamphetamine from his cousin while he went to the liquor store.

But testimony by a Kwik Shop clerk, Tyrell Boor, with a corroborating video, shows Bates with the bag of drugs shortly before the shooting. Boor testified the surveillance video admitted at trial—State's Exhibit 58—was a fair and accurate depiction of his encounter with Bates, but the video was not included in the record on appeal. In any event, Boor, who knew Bates "as a customer and a friend," testified Bates put a black bag on top of the register that had a Crown Royal bag inside of it. When Bates opened the Crown Royal bag, "it had a crystal-like substance in it" that Bates told Boor was methamphetamine. Bates later admitted he took this bag into the Kwik Shop, and into the attic after the shooting, but maintained the bag belonged to Nielsen.

Given the evidence in the record, Bates has not shown he was entitled to an evidentiary hearing on his claim that his trial counsel was ineffective for failing to use compulsory process to require Silverson to testify. His claim is conclusory, lacks an evidentiary basis, and is contrary to the record.

In the same vein, Bates argues his trial counsel was ineffective for failing to use compulsory process to also call Nielsen to testify. In his K.S.A. 60-1507 motion, Bates argues Nielsen "could have testified about [his] statements and demeanor after the shooting while in the attic, where they were both found by police." This argument is also

26

conclusory. Bates did not provide any facts that Nielsen may have testified to, and it is unclear what Nielsen could have provided about Bates' statements and demeanor that Bates could not, or did not, provide himself during his testimony. Again, Bates' claim is vague and conclusory.

Next, Bates' motion alleged his trial counsel was ineffective for failing to use compulsory process to call his wife, Jeanette Clark, as a witness at trial. During trial, the prosecution argued that Bates changed clothes immediately after the shooting, perhaps to dispose of any evidence. In his motion, Bates claims Clark "would have testified that [he] changed clothes prior to the shooting incident, not after it happened as alleged by the prosecution." But though this factual contention is specific, Bates fails to connect the dots to how this allegation supports his claim of ineffectiveness of trial counsel.

During his own trial testimony, Bates was unable to say when he changed his t-shirt the night of the shooting. Bates agreed he was found in the attic wearing a purple t-shirt but was wearing a different t-shirt in the Kwik Shop video taken before the shooting. Bates also testified that he "never did go back in the house" where he was living with Clark on the night of the shooting and Clark was not present at the party where the shooting took place, and Bates claimed he went straight back to the party from the Kwik Shop. So, from Bates' testimony in the record, it is unclear what Clark could have known, or testified to, regarding when he changed his t-shirt. And Bates' clothing change after the shooting was a piece of circumstantial evidence that, even if taken as true, would not necessarily entitle Bates to relief on his claim that his trial counsel was ineffective for failing to call Clark as a witness. Bates' failure to tie his allegations to the facts, particularly given the contrary facts in the record, is fatal to his argument that he was entitled to an evidentiary hearing on this claim.

On review of the record as to Camel, Silverson, Nielsen, and Clark, we conclude the district court did not err when it found Bates did not meet his burden to show he was

entitled to an evidentiary hearing on his claim that his trial counsel was ineffective for failing to use compulsory process to call these four witnesses to testify. Bates' claims were conclusory and made with factual assertions that are vague or contrary to the record. Bates fails to show how counsel's performance was deficient and does not explain how he was prejudiced.

But we find Bates' argument as to the final potential witness, private investigator Schillaci, distinguishable. In support of this claim, Bates contends Schillaci was a defense investigator who "had information to support the defense but was not called as a witness." Bates specifically claims Schillaci interviewed Riverson prior to trial, and Riverson—the only other possible suspect—"confessed to shooting the victim." This information was not introduced at trial.

Bates, then, alleges facts regarding Schillaci that do not appear in the original record but which, if true, could entitle him to relief. Unlike the other potential witnesses Bates identified whose involvement was discussed during trial, Schillaci was never referenced. If not for Bates' current claim indicating Schillaci was a defense investigator, it would be entirely unclear in the record how Schillaci is relevant to this case. If, in fact, Riverson made incriminating statements to Schillaci, such statements may have assisted in Bates' defense.

Although Riverson testified at the preliminary hearing that he did not have a gun, did not shoot the victim or see the shooting, but only heard the gunshot and then saw Bates holding a gun, his testimony was starkly different at trial. At trial, Riverson essentially refused to answer questions and testified that he could not remember anything about the night of Romero's shooting and that he could not recall the party or talking to the police or any prior testimony he may have given. It seems, then, the only way in which Bates may have introduced Riverson's incriminating statement or impeached

28

Riverson with his prior out-of-court statement may have been through Schillaci's testimony.

Although the record is unclear whether trial counsel was ineffective, because we do not know whether Schillaci was available to testify or whether trial counsel was aware of Schillaci's alleged testimony, Bates' claim also does not appear to entirely lack merit. Bates' K.S.A. 60-1507 motion includes two documents which lend some credence to his claims. One letter is from the Office of the Disciplinary Administrator, responding to Bates' disciplinary complaint alleging misconduct by his defense counsel. In that letter, it appears at some point in the proceedings, as part of plea bargaining the State agreed to dismiss the murder charge against Bates, although those negotiations fell apart. Additionally, a letter from trial counsel to Bates after the trial indicates counsel's firm belief that Isaac Riverson was the shooter. While neither document specifically references Schillaci, and a plea bargain could have been discussed for a multitude of unknown reasons, counsel's letter supports Bates' consistent claim that Riverson was the shooter. If Schillaci possessed evidence to support this claim, an exploratory hearing could have fleshed out the details of what could have been crucial defense evidence.

So, then, the question before us is whether the district court should have granted an evidentiary hearing where Bates could present testimony from Schillaci and/or testimony from his trial counsel to determine whether trial counsel's decision to forego the investigator's testimony was a matter of sound trial strategy. Here, the district court generally determined that a hearing was unnecessary because Bates failed to show any of the suggested witnesses were willing or available to testify or that his trial counsel was made aware of the witnesses and provided no affidavits from such witnesses. The district court did not differentiate between the other witnesses and the private investigator. Yet even the State differentiates Schillaci from other witnesses and concedes the investigator's "role in this case, if any, is not clear from the record."

29

Although the district court disregarded the letters attached to Bates' original motion and focuses on the lack of affidavits from all purported witnesses, our Supreme Court has found its rule does not specifically require affidavits. Rather, the district court errs when denying a K.S.A. 60-1507 motion without a hearing where "the motion alleges facts which do not appear in the original record but which, if true, would entitle the movant to relief, and the motion identifies readily available witnesses whose testimony would support such facts or other sources of evidence." *Swenson*, 284 Kan. at 939.

We cannot determine, after review of the motion, files, and records of this case, that such records conclusively show Bates is entitled to no relief. See K.S.A. 2021 Supp. 60-1507(b); Supreme Court Rule 183(f). Therefore, we remand this matter for an evidentiary hearing on Bates' K.S.A. 60-1507 motion regarding whether trial counsel was ineffective in failing to investigate the testimony of Schillaci and in failing to call the investigator at trial.

*Claim of ineffectiveness based on the cross-examination of Kristi Dean*

In Bates' third claim of ineffective assistance of counsel, he argues his trial counsel failed "to sufficiently cross-examine Kristi Dean on credibility." In support of this claim, Bates' K.S.A. 60-1507 motion alleges Dean "gave numerous inconsistent statements to the police" and his trial counsel "failed to impeach [Dean] with her prior statements."

The district court found the record did not support this claim, stating that "[i]n fact, the record shows that his attorney confronted the witness several times as to inconsistent statements and pointed it out in closing arguments." The district court also found Bates failed to show how he was prejudiced by this alleged failure.

On appeal, Bates argues his trial counsel "did not fully impeach Dean at trial," which prevented the district court from evaluating Dean's credibility during trial. But we find his claim unpersuasive.

First, Bates makes two arguments that he did not present in his K.S.A. 60-1507 motion. For the first time on appeal, Bates seems to argue that Dean's credibility as "the State's key witness" should have been impeached because she was "drinking alcohol and participating in illicit drugs on the night of the shooting." Bates also claims for the first time on appeal that he has unspecified evidence to show that Dean's testimony was "elicited after law enforcement officers used Dean's children to threaten her." He contends none of this evidence was assessed by the district court because the court dismissed his K.S.A. 60-1507 motion without an evidentiary hearing.

As noted, a district court may summarily deny a K.S.A. 60-1507 motion if the motion, files, and case records conclusively show the prisoner is not entitled to relief, and we conduct a de novo review of the district court's findings. See *Beauclair*, 308 Kan. at 293. Under these standards, in addition to the rule against raising new arguments for the first time on appeal, Bates' attempt at arguing new facts on appeal is not persuasive. See *Godfrey*, 301 Kan. at 1044.

Despite his new arguments on appeal, Bates' K.S.A. 60-1507 motion did not specifically allege his trial counsel was ineffective for failing to impeach Dean's credibility based on her use of alcohol and drugs the night of the shooting. Bates' K.S.A. 60-1507 motion solely attacked Dean's credibility based on the inconsistent statements to police.

In this same vein, there are no allegations in Bates' K.S.A. 60-1507 motion that contend Dean's testimony was elicited after law enforcement officers used Dean's children to threaten her. In addition to this argument being raised for the first time on

31

appeal, it lacks evidentiary support. Bates does not contend his trial counsel was aware of the alleged threats against Dean's children. And he does not contend his trial counsel should have impeached Dean on these grounds. Bates simply alleges he had this evidence but was not given an opportunity to present the evidence to the district court. Interestingly, however, Bates' trial counsel must have known because, during trial, trial counsel asked Dean if she "recall[ed] whether or not [the detective] brought up—or told [her] to think about [her] family, [her] children, [her] mother, and things like that?" Although Dean responded that she did recall that conversation, she also denied feeling threatened, coerced, or pressured to give a statement.

Trial counsel also referenced Dean's inconsistency and any alleged inappropriate questions about Dean's children in his closing argument, stating, "Dean, though, says different, right? Or does she? . . . That's what she says the second time. This is before police say don't you have a 14-year-old and a 21-year-old? Aren't they getting assistance? You want to get in trouble? Do you have anything else to tell us?"

If Bates has other evidence showing Dean's testimony was coerced, as he claims, it is unclear why he failed to make this argument in his K.S.A. 60-1507 motion, and why he did not include the unspecified evidence in the attachments to his motion or otherwise describe it. Bates' K.S.A. 60-1507 motion included three attachments offered as evidence, so Bates knew he could include such information but nevertheless did not. If he did have such evidence, he abandoned this argument because he raised it incidentally but did not properly argue it in his motion. See *State v. Gallegos*, 313 Kan. 262, 277, 485 P.3d 622 (2021).

As for Dean's inconsistent statements, the record shows the jury was able to evaluate her credibility because trial counsel did cross-examine Dean about her inconsistent statements to law enforcement. For example, defense counsel used transcripts to show Dean's inconsistent statements about her use of marijuana the night of

the shooting. Defense counsel also cross-examined Dean regarding her inconsistent statements about whether she spoke with Bates after the shooting. Notably, defense counsel elicited testimony from Dean that she "felt pressured" by police when she made her statements, but as described, Dean said the opposite when she was testifying about making statements to the detective. And as previously described, in addition to impeaching Dean's credibility during her testimony, defense counsel referenced Dean's inconsistent statements during his closing arguments.

As the district court found, the record shows that defense counsel impeached Dean's credibility during the trial. The jury heard the evidence regarding Dean's inconsistent statements and nevertheless found Bates guilty. "It is the prerogative of a jury to determine the credibility of witnesses, the weight to be given the evidence, and the reasonable inferences of fact which may be drawn from the evidence." *State v. Duncan*, 221 Kan. 714, 719, 562 P.2d 84 (1977).

On a review of the same records, we find the district court did not err in summarily denying this claim of ineffective assistance of counsel because the motion, files, and case records conclusively show that Bates is not entitled to relief. See *Beauclair*, 308 Kan. at 293.

*Claim of ineffectiveness based on trial counsel's failure to object to prosecutorial error*

In his fourth claim of ineffective assistance of trial counsel, Bates contends his trial counsel was ineffective for failing to object to three instances of alleged prosecutorial error. First, he argues that because although the prosecution relied on Riverson's testimony during the preliminary hearing, the prosecution refused to call Riverson as a State witness at trial. So, the defense was "forced to bring Riverson to court through a material witness warrant and he testified in shackles." As noted above,

33

Riverson refused to answer questions during his trial testimony. Second, Bates claims the prosecutor "misrepresented facts regarding when [Bates] first saw the victim and when he changed his clothes." And third, Bates "believes the audio recording was tampered with."

In reviewing the first prosecutorial error claim, the district court noted that Bates called Riverson to testify at trial and Riverson claimed he could neither recall the events regarding the shooting nor how he testified at his preliminary hearing. The district court found: "How that is somehow prosecutorial misconduct is beyond this court's ability to comprehend. Bates has failed to demonstrate how his own attorney was ineffective by objecting to the State not calling a witness or how he was prejudiced." The district court dismissed Bates' remaining claims because the claims were conclusory and not supported by an evidentiary basis.

On appeal, Bates does not offer helpful guidance into these claims. Bates mostly restates his argument that the State relied on Riverson's preliminary hearing testimony but did not call Riverson as a witness. But he concludes that his claims are "related to the unfair conduct of the prosecution which defense counsel should have known."

As the district court found, Bates' claim of ineffectiveness of his own counsel based on the State's decision not to call Riverson as a witness belies reasoning. Bates' trial counsel had no control over who the State calls as a witness, and it is unclear exactly how Bates believes his trial counsel should have objected to the State's decision. See *State v. Miller*, 308 Kan. 1119, 1168, 427 P.3d 907 (2018) (finding the district court correctly held that the "State has the right to present its case as it sees fit" despite the defendant's equivocal stipulation regarding certain facts). For his part, defense counsel did what he could by issuing a subpoena and eventually calling Riverson to testify for the defense. And despite what Bates suggests, Riverson disobeyed his subpoena to appear, which forced the district court to issue a material witness warrant—none of which the prosecution could control.

34

And Bates' ineffectiveness claim is even less persuasive given Riverson largely refused to answer any questions during his trial testimony. Riverson testified that he could not remember the answers to most of the questions presented to him during his testimony, despite the district court admonishing him for his lack of response and despite using transcripts to refresh his memory. Riverson's trial testimony was similarly unresponsive to questions on cross-examination regarding his preliminary hearing testimony, stating he did not recall testifying at the preliminary hearing, even after being presented with a transcript of that hearing. At the conclusion of his testimony, the district judge stated he was "going to strongly urge that the District Attorney give serious consideration to charging [Riverson] with the crime of perjury" for his "intentional and deliberate failure of recollection."

Regardless of Bates' vague claim of ineffectiveness based on the State's decision not to call Riverson to testify, the motion, files, and records conclusively show Bates is not entitled to relief on this claim. See *Beauclair*, 308 Kan. at 293. Even if the prosecution had called Riverson, there is no evidence to suggest he would not have similarly deflected answering any questions posed by the State. Thus, the district court did not err in summarily denying Bates relief on this claim without granting an evidentiary hearing.

Bates' second claim, contending his trial counsel failed to object to the prosecutor's mischaracterization of when Bates first saw the victim or changed his clothes, is conclusory because Bates does not identify any point in which the prosecutor misrepresented the challenged evidence. Bates simply alleges the prosecutor "misrepresented facts." On appeal, Bates does not appear to address this argument except to generally argue, again, that "all these claims related to the unfair conduct of the prosecution which defense counsel should have known."

35

Bates' failure to identify where the prosecutor misrepresented the facts regarding when he saw Romero and when he changed clothes is fatal to this claim for two reasons. First, Bates' claim is too conclusory to meet his burden of showing he was entitled to an evidentiary hearing. Bates did not support his conclusory claim with an evidentiary basis, and such a basis is not evident from the record. See *Thuko*, 310 Kan. at 80. The State attempts to identify the instances to which Bates may be referring, but given these facts were disputed—and the trial lasted four days—it is impossible to know exactly when Bates' trial counsel was supposed to object to the prosecutor's misrepresented facts, and it was Bates' unsatisfied burden to supply this information.

Second, Bates appears to have abandoned this argument on appeal, aside from his single statement that "the State misrepresented the facts of the case regarding when Mr. Bates first saw the victim and when Mr. Bates changed out of his clothes." Although the district court found this claim was conclusory and lacked factual support, on appeal, Bates neither challenges the district court's specific findings, nor submits any argument regarding this claim in his appellate brief. We find that Bates abandoned the issue because he raised this point incidentally in his brief but did not argue it therein. See *Gallegos,* 313 Kan. at 277; *Meggerson*, 312 Kan. at 246.

Like his second claim regarding prosecutorial error, Bates' third claim is also conclusory. And, likewise, Bates has abandoned this claim because he does not argue the issue on appeal. See *Gallegos*, 313 Kan. at 277; *Meggerson*, 312 Kan. at 246. In his K.S.A. 60-1507 motion, Bates stated that he "believes the audio recording was tampered with." The district court concluded this claim was conclusory, speculative, and not supported by an evidentiary basis.

On appeal, Bates merely restates his claim of tampering with the audio recording but provides neither an evidentiary basis nor argument to support his conclusory allegation. Presumably, Bates believes the prosecution tampered with the audio

36

recording, but his conclusory claim fails to allege that his trial counsel had any knowledge of that event, as was necessary for counsel to object to the admission of the audio tape. Despite framing this claim as one of ineffective assistance of counsel, Bates appears to be arguing prosecutorial error, generally. But Bates cannot make a claim of prosecutorial error in a K.S.A. 60-1507 motion. See *Haddock v. State*, 282 Kan. 475, 519, 146 P.3d 187 (2006) (holding prosecutorial error is a trial error that is typically inappropriate for a K.S.A. 60-1507 motion). Regardless, trial transcripts show—contrary to Bates' claim—that the State laid a foundation and authenticated the recording at trial.

For these reasons, the district court did not err in summarily denying these ineffective assistance of counsel claims based on failing to object to prosecutorial error. See *Beauclair*, 308 Kan. at 293.

*Claim of ineffectiveness based on trial counsel's failure to obtain independent forensic examination of the evidence*

In his last claim of ineffectiveness, Bates contends his trial counsel was ineffective for failing "to obtain independent forensic examination of evidence." The district court rejected this claim, finding Bates "fail[ed] to tell us what pieces of evidence should have been independently examined, what tests should have been given or how the results would have changed the outcome of the trial."

On appeal, Bates argues his trial counsel's "deficient investigation regarding independent forensic testing" prevented Bates from presenting "a stronger defense and case theory." Bates expands this argument to include the lack of a murder weapon, and that Bates was not swabbed for gunpowder residue. He also maintains that despite that the State strongly believed he changed clothes immediately after the shooting, defense counsel did not request forensic testing on the clothes police found in his apartment. Bates concludes that his trial counsel's failure to obtain independent examination of this

37

"key evidence" constitutes deficient performance because it "fell below the professional norms" and prohibited Bates from receiving a fair trial.

Bates is, again, trying to improve upon his original argument by raising new arguments for the first time on appeal, without asserting an exception that would allow him to do so. See *Godfrey*, 301 Kan. at 1044. As has been repeatedly stated, Bates bears the burden to show that his K.S.A. 60-1507 motion warranted a hearing. The district court looks to the motions, files, and records of the case to determine whether Bates is entitled to relief. On appeal, this court conducts a de novo review of the same records. See *Beauclair*, 308 Kan. at 293. Thus, Bates' attempt at raising a new argument on appeal to support the conclusory claim made in his K.S.A. 60-1507 motion is improper.

As the district court found, Bates' claim included in his K.S.A. 60-1507 motion was conclusory and not supported by an evidentiary basis. Bates did not challenge specific evidence, and his lack of specificity is fatal to his claim. Similarly, Bates did not provide an evidentiary basis to support this claim and such a basis is not evident from the record.

CONCLUSION

In sum, we decline to decide Bates' novel freestanding innocence claim. Not only were the type of claim and applicable standard inadequately briefed, but in light of our remand regarding the private investigator evidence, it is unnecessary for us to reach this novel issue. On review of the motions, files, and records of this case, we find the district court erred by summarily dismissing Bates' claim of ineffective assistance of counsel based solely on counsel's failure to call the defense investigator, Schillaci, as a defense witness. We remand this matter to the district court for an evidentiary hearing on that basis. On our review of the same records, we conclude that the district court did not err in finding Bates failed to meet his burden of showing he was entitled to an evidentiary

hearing on his remaining claims of ineffective assistance of counsel, and as a result, the district court did not err in summarily denying Bates' K.S.A. 60-1507 motion on those bases.

The judgment of the district court is affirmed in part, reversed in part, and remanded with directions.